IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | **CRIMINAL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 11-740-KSM-1** |
| **MATTHEW ACKERMAN,** | |
| Defendant. | |

## MEMORANDUM

**MARSTON, J.**                                                                                    **April 25, 2022**

Defendant Matthew Ackerman, who is currently serving a 210-month sentence at Federal Medical Center ("FMC") Devens for receipt, possession, and conspiracy to receive, distribute, and possess child pornography, filed his second emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 102.) In seeking a reduction in his sentence, Ackerman asserts that his medical conditions place him at an increased risk of harm from the COVID-19 virus and amount to an extraordinary and compelling reason justifying his release. (*Id.*) The Government opposes Ackerman's motion, arguing that early release for Ackerman, who is now vaccinated, remains inappropriate. (Doc. No. 103.)

For the reasons discussed below, the Court denies Ackerman's motion.

## I.      Background

Because the Court writes only for the parties, we rely on the factual background outlined in this Court's August 25, 2020 Memorandum on Ackerman's first motion for compassionate release. *See United States v. Ackerman*, Criminal Action No. 11-740-KSM-1, 2020 WL 5017618, at *1–2 (E.D. Pa. Aug. 25, 2020).

Since our August 25, 2020 Memorandum, Ackerman has committed three disciplinary infractions: (1) fighting with another person (June 21, 2021); (2) possessing stolen property—a stolen family photograph of a nude child that belonged to another inmate (October 11, 2021); and (3) mail abuse—sending a letter to an unauthorized recipient (January 24, 2022).  (Doc. No. 103 at 7–8.)

Ackerman was housed at FCI Danbury but has been recently transferred to FMC Devens. (*Id.* at 6 n.2.)  As of the time of this writing, he has served approximately 125 months and has credit for good conduct time of approximately 125 months; therefore, he has served approximately 141 months of his 210-month sentence.  (*Id.* at 7.)  His minimum release date is January 5, 2027.  (*Id.*)

## II.    Legal Standard

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."  18 U.S.C. § 3582(c); *see also McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007).  The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, provides such authorization, "empower[ing] a district court to modify a term of imprisonment on a defendant's motion" after the defendant has exhausted his administrative remedies.  *United States v. Towel*, Criminal Action No. 17-519-6, 2020 WL 2992528, at *3 (E.D. Pa. June 4, 2020); *United States v. Tartaglione*, Criminal Action No. 15-491, 2020 WL 3969778, at *3 (E.D. Pa. July 14, 2020).

Under § 3582(c)(1)(A),

> [a court] may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

> (i)    Extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); *see also United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020).

Congress did not define "extraordinary and compelling reasons," except to advise that "'rehabilitation [of the defendant] alone' does not suffice." *Towel*, 2020 WL 2992528, at *3 (citing 18 U.S.C. § 944(t)). Instead, Congress delegated that task to the United States Sentencing Commission. 18 U.S.C. § 944; *see also Tartaglione*, 2020 WL 3969778, at *4. In turn, Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court, after considering the § 3553(a) factors, determines that "extraordinary and compelling reasons warrant the reduction"; "the defendant is not a danger to the safety of any other person or to the community"; and "the reduction is consistent with this policy statement." U.S. Sentencing Guidelines Manual § 1B1.13; *see also Towel*, 2020 WL 2992528, at *3.

The Sentencing Commission's commentary to § 1B1.13 enumerates categories of reasons that qualify as "extraordinary and compelling": (1) certain serious medical conditions (i.e., a terminal illness or a serious medical condition that "substantially diminishes the ability of the defendant to provide self-care" and "from which he or she is not expected to recover"); (2) the defendant's age (over 65), if he or she is also experiencing a serious deterioration of health and has served at least ten years or 75% of his or her sentence; (3) the defendant's family circumstances; or (4) other reasons as determined by the Director of the Bureau of Prisons ("BOP"). § 1B1.13 Application Note 1; *see also United States v. Tommaso*, Criminal No. 15-602-2, 2021 WL 4941490, at *3 (E.D. Pa. Oct. 22, 2021). "As a result of amendments to § 3582(c)(1)(A) by the First Step Act, courts now conclude that the catch-all category of 'other

3

reasons' applies not only to the BOP Director, but also to courts." *United States v. Justis*,

Criminal Action No. 15-416, 2020 WL 43655596, at *2 (E.D. Pa. July 29, 2020) (citations

omitted).  "The defendant bears the burden of proving that extraordinary and compelling reasons

exist." *United States v. Thornton*, Criminal No. 2:18-167-1, 2020 WL 4368155, at *3 (W.D. Pa.

July 29, 2020); *see also Tommaso*, 2021 WL 4941490, at *3.

    In sum, in evaluating Ackerman's motion for compassionate release, we must consider:

(1) whether "extraordinary and compelling" reasons exist to reduce the defendant's sentence; (2)

whether the defendant is a danger to the community; and (3) whether the § 3553(a) factors

support a sentence reduction.  *Justis*, 2020 WL 43655596, at *2 (citations omitted).[1]

### III.    Discussion

#### A.  *Extraordinary and Compelling Reasons*

    The Court discussed Ackerman's underlying medical conditions, including high blood

pressure, hearing loss, a traumatic brain injury, post-traumatic stress disorder ("PTSD"),

depression, and an unknown skin disorder, in our prior Memorandum.  *See Ackerman*, 2020 WL

5017618, at *4–8.

    Presently, Ackerman alleges that he suffers from hypertension, high blood pressure,

obesity, anxiety, depression, and PTSD, which he alleges are "likely to cause fatality if COVID-

19 was contracted."  (Doc. No. 102 at 1.)

---

[1] Because the Government has not discussed whether Ackerman has exhausted his administrative
remedies, the Court finds that the Government has conceded exhaustion.  *See* 18 U.S.C. § 3582(c)(1)(A)
(providing that a defendant may only move for compassionate release after he "has fully exhausted all
administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's
behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,
whichever is earlier").

A review of Ackerman's medical records[2] confirms that Ackerman has been diagnosed with hypertension and anxiety (*see, e.g.*, Doc. No. 104 at 2–3, 60), as well as depression and Other Specified Trauma and Stressor Related Disorder (*see id.* at 60, 74).

The CDC has recognized that hypertension can potentially increase the risk of severe infection from COVID-19.  *See* Ctr. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 25, 2022) (last visited Apr. 20, 2022) ("Having heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make you more likely to get very sick from COVID-19.").  In interpreting this guidance, many courts in this Circuit have found that hypertension does not constitute an extraordinary or compelling reason to reduce a defendant's sentence.  *See, e.g.*, *United States v. Folk*, No. 20-2924, 2022 WL 58540, at *2 (3d Cir. 2022) (holding that the district court did not abuse its discretion in finding that the defendant's hypertension did not create extraordinary or compelling circumstances warranting compassionate release even though his hypertension may have placed him at higher risk for COVID-19; *United States v. Laforte*, Criminal No. 19-256, 2022 WL 44747, at *3 (W.D. Pa. Jan. 5, 2022) ("[M]any courts, following CDC guidance, have found that hypertension only 'might' or 'possibly' present a risk of severe infection, and therefore, does not constitute an extraordinary or compelling reason to reduce his sentence.") (collecting cases); *United States v. McNish*, Criminal Action No. 18-267, 2021 WL 5492587, at *6 (E.D. Pa. Nov. 22, 2021) (finding that the defendant's hypertension did not represent an extraordinary and compelling reason for his release and noting that "district courts have routinely denied motions for compassionate release based on conditions like hypertension that are merely potential COVID-

---

[2] The Government filed Ackerman's medical records under seal.  (Doc. No. 104.)

19 risk factors").

Additionally, Ackerman's records suggest that his hypertension continues to remain well controlled by medication.  (*See, e.g.*, Doc. No. 104 at 3 ("Inmate reports that he was first diagnosed in 2007 with HTN.  He reports that he has no somatic complaints and that he is compliant with medication use.").)  As this Court previously noted, "Where, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted."  *Ackerman*, 2020 WL 5017618, at *5 (collecting cases); *see also United States v. Bednarski*, 1:19-CRIM-20(2), 2022 WL 80080, at *5 (W.D. Pa. Jan. 7, 2022) ("[F]ederal courts routinely hold that compassionate release is not warranted where there is no indication a defendant's high blood pressure cannot be properly controlled with medication or other medical care."); *United States v. Brashear*, Criminal Action No. 15-00636 (SDW), 2021 WL 5239119, at *2–3 (D.N.J. Nov. 10, 2021) (denying motion for compassionate release and noting the "defendant's hypertension is currently being treated with medication, and BOP staff indicate that her condition is 'well controlled'").

Although Ackerman states that he is obese, he is not; rather, he is only mildly overweight.  *See* Ctr. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 25, 2022) (last visited Apr. 20, 2022) (defining "overweight" as a body mass index ("BMI") of 25 or higher, but under 30 and defining "obesity" as a BMI of 30 or higher, but under 40).  (*See* Doc. No. 103 at 4 n.1; Doc. No. 104 at 65 (showing that Ackerman weighs 166 pounds, and with his height, that corresponds to a BMI of 26).)  The CDC has recognized that being overweight "can make you more likely to get very sick from COVID-19" and noted that "[t]he risk of severe illness from COVID-19

increases sharply with higher BMI."  *See* Ctr. for Disease Control,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-
conditions.html (updated Feb. 25, 2022) (last visited Apr. 20, 2022).  Here, with a BMI of 26,

Ackerman is on the very low end of the risk spectrum.  Being mildly overweight does not

constitute an extraordinary or compelling reason warranting his release.  *Cf. United States v.
Dunich-Kolb*, Crim. No. 14-150 (KM), 2022 WL 580919, at *5 (D.N.J. Feb. 14, 2022) ("[C]ourts

have routinely found that the revision to the CDC list does not warrant a finding of extraordinary

services at the level of overweight or mild obesity, even in combination with hypertension[.]");

*Brashear*, 2021 WL 5239119, at *2–3 (denying motion for compassionate release where the

defendant had a BMI of 30 or 31 and was only mildly obese).

Ackerman also has anxiety and depression.  The CDC has recognized that "having mood

disorders, including depression . . . can make you more likely to get very sick from COVID-19."

*See* Ctr. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/people-with-medical-conditions.html (updated Feb. 25, 2022) (last visited Apr. 21,

2022).  However, Ackerman's mental health conditions, even when coupled with his other

medical issues, do not compel a finding that Ackerman has met his burden of showing that

extraordinary or compelling conditions.  *See, e.g.*, *United States v. Smith*, No. 2:18-CR-00049,

2022 WL 1127116, at *2 (E.D. Tenn. Apr. 15, 2022) (denying compassionate release where the

defendant had major depressive order and hepatitis C); *United States v. Franik*, Criminal No. 10-
274 (DWF/LIB), 2021 WL 5989939, at *3 (D. Minn. Dec. 17, 2021) ("The Court also cannot

conclude that Franik suffers from any medical condition that necessitates release.  While the

Court recognizes that obesity and mood disorders are medical conditions that increase a person's

risk of severe illness from COVID-19, the Court finds no indication that either condition alone or

in combination with the presence of COVID-19 at Pekin FCI, has diminished Franik's ability to provide self-care while in prison.").

Significantly, Ackerman has been fully vaccinated against COVID-19, having received two doses and a booster shot of the Moderna vaccine.  (Doc. No. 104 at 95.)  "District Courts in the Third Circuit consistently agree that an FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of the pandemic . . . does not constitute an extraordinary and compelling reason for compassionate release." *United States v. Hannigan*, Criminal Action No. 19-373, 2022 WL 814559, at *15 (E.D. Pa. Mar. 17, 2022) (collecting cases); *see also United States v. Thomas*, Nos. 21-1645 & 21-2105, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (affirming the district court's denial of compassionate release and noting that the district court "appropriately recognized that [the defendant's] vaccination reduced the health risks he relied on in support of his motion"); *United States v. Holmes*, Criminal Action No. 08-495, 2022 WL 1082008, at *2 (E.D. Pa. Apr. 11, 2022) ("Holmes has been fully vaccinated against COVID-19 with two doses and a booster shot of the Pfizer vaccine.  Even in the midst of coronavirus variants, this vaccine is still highly effective at preventing serious cases and hospitalizations or death . . . Now that he is vaccinated, Holmes has failed to show that he is at any greater threat of contracting COVID-19 in his current situation than the general public."); *United States v. Paige*, Criminal Action No. 10-121-2, 2022 WL 704200, at *4 (E.D. Pa. Mar. 9, 2022) (finding that there were not extraordinary and compelling reasons justifying compassionate release where the defendant "received the requisite two doses of the Moderna COVID-19 vaccine on May 19 and June 16, 2021"); *United States v. Blanco*, Criminal No. 18-424, 2021 WL 5112252, at *3 (E.D. Pa. Nov. 2, 2021) ("Blanco received the Moderna vaccine on June 10, 2021.  The vast majority of cases deny Motions for Compassionate

Release where the defendant has been administered a COVID-19 vaccine because the vaccines are effective, it is evidence that the inmate is protecting themselves from the virus, and it shows BOP's effort in protecting inmates.") (collecting cases).

And, although Ackerman states that he recently had COVID-19 despite being vaccinated (see Doc. No. 103 at 1), he appears to have recovered fully (*see* Doc. No. 104 at 11 (noting that Ackerman was cleared from isolation after having tested positive for COVID-19 and that he was "currently asymptomatic")). Ackerman's medical records also indicate that he suffered few, if any, symptoms (*see id.* at 12–17).

Considering these factors together, the Court concludes that Ackerman's medical conditions coupled with the ongoing COVID-19 pandemic do not create extraordinary or compelling reasons justifying his release, particularly given his vaccination status.

In reaching our decision that Ackerman's medical condition does not present extraordinary or compelling reasons supporting his release, the Court also considers the fact that there are currently only three active cases at FMC Devens, *see* Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 20, 2022) (indicating that at FMC Devens, one inmate and two staff members are currently positive for COVID-19), and the fact that 458 staff and 928 inmates have been fully vaccinated at the facility, *see id.*[3]

### B.  Danger to the Community and 3553(a) Sentencing Factors

Even if the Court found that Ackerman had met his burden of showing extraordinary and compelling reasons, those considerations would be outweighed by the § 3553(a) factors and the fact that Ackerman continues to remain a danger to the community.

---

[3] Even were Ackerman transferred back to FCI Danbury, where he previously was located, currently there are zero inmates and zero staff members positive for COVID-19 at that institution. *See id.*

As we noted at length in our prior Memorandum, Ackerman presents a danger to his community:

> Ackerman received, possessed, and traded thousands of images showing children engaging in sexual acts, which included sadistic and masochistic images.  Without a doubt, Ackerman's behavior was predatory:  as the sentencing court observed, Ackerman actively sought out minors online, performed sex acts over the Internet for them, engaged in sexual chats with them online, and even attempted to meet an adolescent male at Lehigh Valley Mall.  His conduct was truly abhorrent.  If Ackerman were released from prison, he could again perpetrate the same crimes.

*Ackerman*, 2020 WL 5017618, at *8.

Ackerman's conduct in prison in the year and a half since our prior Memorandum gives the Court serious concerns that nothing has changed and Ackerman continues to be a danger to the community, especially to extremely vulnerable members of society—our children.  It also indicates a continued lack of remorse for his crimes and a troubling lack of rehabilitation.  As noted above, Ackerman *stole a family photograph of a nude child* from another inmate *while serving his sentence for child pornography*.  By doing so, Ackerman continues to exhibit the same abhorrent and predatory behavior that originally resulted in his 210-month sentence.  An early release would be entirely inappropriate and fail to adequately protect the community from such behavior.

Further, the Court finds that the § 3553(a) factors mandate the denial of Ackerman's compassionate release motion.  As we previously explained, "[g]ranting Ackerman compassionate release at this stage would not reflect the seriousness of his crimes, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by him, nor would it prevent sentencing disparities."  *Ackerman*, 2020 WL 5017618, at *9.  This continues to remain the case.  In particular, Ackerman's possession of a photograph of a nude child in prison underscores that an early release would not protect the

10

public from future crimes by him or afford adequate deterrence.

## IV.     Conclusion

For the foregoing reasons, the Court denies Ackerman's second motion for

compassionate release under §3582(c)(1)(A)(i).

An appropriate Order follows.